CLOSED,MEMBERCASE,SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:12-cv-02052-EL

DECKER et al v. WYETH PHARMACEUTICALS, INC. et al
Assigned to: HONORABLE EDMUND V. LUDWIG
related Case: 2:12-cv-00739-EL
Cause: 28:1332 Diversity-Product Liability

Date Filed: 04/18/2012
Date Terminated: 08/20/2012
Jury Demand: Defendant
Nature of Suit: 365 P.I.: Personal Inj.
Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**QUINTIN DECKER**
*A MINOR, BY*

represented by **EDWARD BLIZZARD**
BLIZZARD MCCARTHY AND
NABERS L.L.P.
440 LOUISIANA
SUITE 1701
HOUSTON, TX 77002
713-844-3750
Email: eblizzard@blizzardlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. SCOTT NABERS**
BLIZZARD MCCARTHY AND
NABERS L.L.P.
440 LOUISIANA
SUITE 1701
HOUSTON, TX 77002
713-844-3750
Email: snabers@blizzardlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**REBECCA B. KING**
BLIZZARD MCCARTHY &
NABERS
440 LOUISIANA #1710
HOUSTON, TX 77002
713-844-3750
Email: rking@blizzardlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ROSEMARY PINTO**
FELDMAN & PINTO PC
1604 LOCUST ST., 2R
PHILADELPHIA, PA 19103
215-546-2604
Email: rpinto@feldmanpinto.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**SADIE DECKER**                    represented by  **EDWARD BLIZZARD**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **J. SCOTT NABERS**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **REBECCA B. KING**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **ROSEMARY PINTO**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**
**ANTHONY DECKER**                  represented by  **EDWARD BLIZZARD**
*INDIVIDUALLY*                                      (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **J. SCOTT NABERS**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **REBECCA B. KING**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **ROSEMARY PINTO**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

V.

**Defendant**
**WYETH PHARMACEUTICALS,**          represented by  **CATHERINE B. STEVENS**
**INC.**                                            SKADDEN ARPS SLATE
                                                    MEAGHER & FLOM LLP
                                                    FOUR TIMES SQUARE
                                                    NEW YORK, NY 10036-6522

212-735-3353
Email:
catherine.stevens@skadden.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KATHERINE ARMSTRONG**
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM
FOUR TIMES SQUARE
NEW YORK, NY 10036-6522
212-735-2954
Email:
katherine.armstrong@skadden.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARK CHEFFO**
SKADDEN ARPS SLATE
MEAGHER & FLOM LLP
FOUR TIMES SQUARE
NEW YORK, NY 10036-6522
212-735-2183
Email: mark.cheffo@skadden.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROBERT A. LIMBACHER**
GOODELL, DEVRTES, LEECH, &
DANN
ONE COMMERCE SQUARE
2005 MARKET STREET SUITE
1940
PHILA, PA 19103-2793
267-765-3601
Fax: 267-765-3636
Email: rlimbacher@gdldlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRANDON L. GOODMAN**
GOODELL DEVRIES LEECH &
DANN LLP
ONE COMMERCE SQUARE
2005 MARKET ST SUITE 1940
PHILADELPHIA, PA 19103
267-765-3604
Email: bgoodman@gdldlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**
**WYETH LLC**                    represented by  **ROBERT A. LIMBACHER**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**WYETH**

**Defendant**
**PFIZER, INC.**    represented by    **CATHERINE B. STEVENS**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**KATHERINE ARMSTRONG**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MARK CHEFFO**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROBERT A. LIMBACHER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BRANDON L. GOODMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**
**WOLTERS KLUWER HEALTH,**
**INC.**
*TERMINATED: 06/05/2012*    represented by    **ERNEST FRANK KOSCHINEG**
KENT & MCBRIDGE
1617 JFK BLVD
STE 1200
PHILADELPHIA, PA 19103
215-568-1800
Email: ekoschineg@kentmcbride.com
*TERMINATED: 06/05/2012*
*LEAD ATTORNEY*

**CAROLYN PURWIN**
KENT & MCBRIDE PC
1617 JOHN F. KENNEDY BLVD
SUITE 1200
PHILADELPHIA, PA 19103
215-568-1800
Email: cpurwin@kentmcbride.com
*TERMINATED: 06/05/2012*

**Defendant**

**WOLTERS KLUWER UNITED STATES, INC.**
*TERMINATED: 06/05/2012*

represented by **ERNEST FRANK KOSCHINEG**
(See above for address)
*TERMINATED: 06/05/2012*
*LEAD ATTORNEY*

**CAROLYN PURWIN**
(See above for address)
*TERMINATED: 06/05/2012*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/18/2012 | 1 | NOTICE OF REMOVAL by PFIZER, INC. from Court of Common Pleas of Philadelphia, case number April 2012, No. 1876; with Certificate of Service. (Filing fee $ 350 receipt number 061529) (Attachments: # 1 Civil Cover Sheet, # 2 Designation Form, # 3 Case Management Track Form) (mima, ) (Entered: 04/18/2012) |
| 05/10/2012 | 2 | NOTICE of Appearance by ERNEST FRANK KOSCHINEG on behalf of WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC. with Certificate of Service(KOSCHINEG, ERNEST) (Entered: 05/10/2012) |
| 05/10/2012 | 3 | NOTICE of Appearance by CAROLYN PURWIN on behalf of WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC. with Certificate of Service(PURWIN, CAROLYN) (Entered: 05/10/2012) |
| 05/10/2012 | 4 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC..Brief, Certificate of Service. (Attachments: # 1 Text of Proposed Order Proposed Order)(PURWIN, CAROLYN) (Entered: 05/10/2012) |
| 05/10/2012 | 5 | Memorandum of Law in Support re 4 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(PURWIN, CAROLYN) (Entered: 05/10/2012) |
| 05/10/2012 | 6 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC..(PURWIN, CAROLYN) (Entered: 05/10/2012) |
| 05/17/2012 | 7 | MOTION to Remand filed by ANTHONY DECKER, QUINTIN DECKER, SADIE DECKER.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I)(PINTO, ROSEMARY) (Entered: 05/17/2012) |
| 05/18/2012 | 8 | NOTICE of Appearance by ROBERT A. LIMBACHER on behalf of WYETH PHARMACEUTICALS, INC. with Certificate of Service (LIMBACHER, ROBERT) (Entered: 05/18/2012) |
| 05/18/2012 | 9 | ANSWER to Complaint by PFIZER, INC., WYETH LLC, WYETH PHARMACEUTICALS, INC. with Affirmative Defenses, Certificate of |

| | | |
|---|---|---|
| | | Service. (LIMBACHER, ROBERT) Modified on 5/22/2012 (nd, ). (Entered: 05/18/2012) |
| 05/18/2012 | 10 | Disclosure with Certificate of Service by PFIZER, INC., WYETH LLC, WYETH PHARMACEUTICALS, INC..(LIMBACHER, ROBERT) (Entered: 05/18/2012) |
| 05/21/2012 | 11 | Original Record together with certified copy of docket entries received from Court of Common Pleas of PHILADELPHIA County. (kk, ) (Entered: 05/21/2012) |
| 05/24/2012 | 12 | STIPULATION re 4 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 5 Memorandum, *for Plaintiffs Extension of Time to File Response* by WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC.. (PURWIN, CAROLYN) (FILED IN ERROR BY ATTORNEY; COPY FORWARDED TO JUDGE FOR APPROVAL) Modified on 5/25/2012 (nd, ). (Entered: 05/24/2012) |
| 05/31/2012 | 13 | PRAECIPE to Withdraw Plaintiffs' Motion to Remand *(document #7)* by ANTHONY DECKER, QUINTIN DECKER, SADIE DECKER. (PINTO, ROSEMARY) Modified on 6/1/2012 (nd, ). (Entered: 05/31/2012) |
| 05/31/2012 | 14 | STIPULATION AND ORDER THAT THE TIME IN WHICH PLAINTIFF MAY SERVE AND FILE A RESPONSE TO DEFENDANTS MOTION TO DISMISS IS HEREBY EXTENDED UNTIL 6/7/2012. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 5/31/2012. 5/31/2012 ENTERED AND COPIES E-MAILED.(kk, ) (Entered: 05/31/2012) |
| 06/05/2012 | 15 | STIPULATION of Dismissal *of Defendants Wolters Kluwer Health, Inc. and Wolters Kluwer United States Inc.* by WOLTERS KLUWER HEALTH, INC., WOLTERS KLUWER UNITED STATES, INC.. (PURWIN, CAROLYN) (Entered: 06/05/2012) |
| 06/06/2012 | 16 | STIPULATION AND ORDER THAT THE DEFENDANTS WOLTERS KLUWER HEALTH, INC. AND WOLTERS KLUWER UNITED STATES, INC. ARE DISMISSED WITHOUT PREJUDICE WITH EACH PARTY TO BEAR THEIR OWN COSTS. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 6/5/2012. 6/6/2012 ENTERED AND COPIES E-MAILED.(kk, ) (Entered: 06/06/2012) |
| 06/14/2012 | 17 | NOTICE of Hearing: A RULE 16 SCHEDULING CONFERENCE WILL BE HELD ON THURSDAY, 6/28/2012 AT 11:30 AM BEFORE HONORABLE EDMUND V. LUDWIG BY TELEPHONE, PLAINTIFFS' COUNSEL TO INITIATE THE CALL TO CHAMBERS. 215-580-2030. (Attachments: # 1 C A S E Management Program)(kc, ) (Entered: 06/14/2012) |
| 06/25/2012 | 18 | APPLICATION for PRO HAC VICE ADMISSION of (Rebecca B. King) filed by ANTHONY DECKER, QUINTIN DECKER, SADIE DECKER.SPONSORS STATEMENT, PROPOSED ORDER, CERTIFICATE OF SERVICE.(FEE PAID PPE065219) (kk, ) (Entered: 06/26/2012) |
| 06/26/2012 | 19 | MOTION for Pro Hac Vice *Admission of Katherine Armstrong* filed by PFIZER, INC., WYETH PHARMACEUTICALS, INC..Certificate of Service. (FEE PAID PPE065370) (LIMBACHER, ROBERT) Modified on |

|  |  | 6/28/2012 (kk, ). (Entered: 06/26/2012) |
|---|---|---|
| 06/26/2012 | 20 | MOTION for Pro Hac Vice *Admission of Catherine Stevens* filed by PFIZER, INC., WYETH PHARMACEUTICALS, INC..Certificate of Service.(FEE PAID PPE065370)(LIMBACHER, ROBERT) Modified on 6/28/2012 (kk, ). (Entered: 06/26/2012) |
| 06/27/2012 | 21 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY REBECCA B. KING FOR THE PLAINTIFFS IS GRANTED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 6/27/2012. 6/27/2012 ENTERED AND COPIES E-MAILED.(kk, ) (Entered: 06/27/2012) |
| 06/29/2012 | 22 | MOTION for Pro Hac Vice *Admission of Mark Cheffo* filed by PFIZER, INC., WYETH PHARMACEUTICALS, INC..Certificate of Service.(FEE PAID PPE065595)(LIMBACHER, ROBERT) Modified on 7/3/2012 (kk, ). (Entered: 06/29/2012) |
| 06/29/2012 | 23 | APPLICATION for PRO HAC VICE ADMISSION of (J. Scott Nabers) filed by ANTHONY DECKER, QUINTIN DECKER, SADIE DECKER.SPONSORS STATEMENT, CERTIFICATE OF SERVICE, PROPOSED ORDER. (FEE PAID PPE065454) (kk, ) (Entered: 07/02/2012) |
| 06/29/2012 | 24 | APPLICATION for PRO HAC VICE ADMISSION of (Ed Blizzard) filed by ANTHONY DECKER, QUINTIN DECKER, SADIE DECKER.SPONSOR'S STATEMENT, PROPOSED ORDER, CERTIFICATE OF SERVICE. (FEE PAID PPE065455) (kk, ) (Entered: 07/02/2012) |
| 07/03/2012 | 25 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY KATHERINE ARMSTRONG FOR PFIZER, INC. AND WYETH PHARMACEUTICALS, INC. IS GRATED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/3/2012. 7/3/2012 ENTERED AND COPIES MAILED AND E-MAILED.(kk, ) (Entered: 07/03/2012) |
| 07/03/2012 | 26 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY CATHERINE B. STEVENS FOR PFIZER, INC. AND WYETH PHARMACEUTICALS, INC. IS GRANTED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/3/2012. 7/3/2012 ENTERED AND COPIES MAILED, E-MAILED.(kk, ) (Entered: 07/03/2012) |
| 07/03/2012 | 27 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY J. SCOTT NABERS FOR ANTHONY DECKER, QUINTIN DECKER AND SADIE DECKER IS GRANTED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/3/2012. 7/3/2012 ENTERED AND COPIES MAILED, E-MAILED.(kk, ) (Entered: 07/03/2012) |
| 07/03/2012 | 28 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY EDWARD BLIZZARD FOR ANTHONY DECKER, QUINTIN DECKER AND SADIE DECKER IS GRANTED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/3/2012. 7/3/2012 ENTERED AND COPIES MAILED, E-MAILED.(kk, ) (Entered: 07/03/2012) |
| 07/03/2012 | 29 | ORDER THAT BY 7/6/2012, EXCHANGE SELF-EXECUTING DISCLOSURES; BY 7/13/2012, SERVE WRITTEN DISCOVERY REQUEST; BY 8/13/2012, COUNSEL SHALL COMPLETE AND |

| | | |
|---|---|---|
| | | SUBMIT THE ATTCHED JOINT DISCOVERY SCHEDULE. A RULE 16 CONFERENCE WILL BE HELD ON 8/16/2012 10:30 AM BY TELEPHONE BEFORE HONORABLE EDMUND V. LUDWIG, ETC. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/3/2012. 7/3/2012 ENTERED AND COPIES MAILED, E-MAILED.(kk, ) (Entered: 07/03/2012) |
| 07/13/2012 | 30 | ORDER THAT THE PRO HAC VICE APPLICATION OF ATTORNEY MARK CHEFFO FOR PFIZER, INC. AND WYETH PHARMACEUTICALS, INC. IS GRANTED. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 7/13/2012. 7/13/2012 ENTERED AND COPIES E-MAILED.(kk, ) Modified on 7/16/2012 (afm, ). (Entered: 07/13/2012) |
| 07/26/2012 | 31 | NOTICE of Appearance by BRANDON L. GOODMAN on behalf of PFIZER, INC., WYETH PHARMACEUTICALS, INC. with Certificate of Service(GOODMAN, BRANDON) (Entered: 07/26/2012) |
| 08/20/2012 | 32 | ORDER THAT THE ABOVE-CAPTIONED CASE ARE CONSOLIDATED FOR ALL PURPOSES UNDER CIVIL ACTION NO.12-739. ALL FURTHER PAPERS ARE TO BE FILED UNDER CIVIL ACTION NO.12-739. THE DOCKET CLERK IS TO AMEND THE DOCKET OF CIVIL ACTION NO 12-739 TO INCLUDE ALL PARTIES AND ALL COUNSEL OF RECORD. CIVIL ACTION NO. 12-2052 IS CLOSED FOR STATISTICAL PURPOSES, ETC. SIGNED BY HONORABLE EDMUND V. LUDWIG ON 8/17/2012. 8/20/2012 ENTERED AND COPIES E-MAILED.(kk, ) (Entered: 08/20/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/22/2013 15:14:33 | | |
| **PACER Login:** | pe0286 | **Client Code:** | 1394 |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-cv-02052-EL |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

**Feldman & Pinto**
By: Rosemary Pinto, Esquire
Attorney ID Number: 53114
1604 Locust Street, 2R
Philadelphia, PA 19103
Office: (215) 546-2604
Facsimile (215) 546-9904
email: rpinto@feldmanpinto.com

**Blizzard, McCarthy & Nabers**
J. Scott Nabers, Esquire
Philadelphia Attorney ID Number: 310357
Rebecca B. King, Esquire
Philadelphia Attorney ID Number: 310895
Edward F. Blizzard, Esquire
Texas Bar Number: 02495000
440 Louisiana, Suite 1710
Houston, TX 77002
Office: (713) 844-3750
Facsimile (713) 844-3755
email: snabers@blizzardlaw.com, rking@blizzardlaw.com
and eblizzard@blizzardlaw.com

Attorney for Plaintiffs

| | |
|---|---|
| QUINTIN DECKER, a minor, by SADIE DECKER and ANTHONY DECKER, Guardians, and SADIE DECKER and ANTHONY DECKER, individually, 1511 Bridlewood Lane Raymore, MO 64083 | COURT OF COMMON PLEAS TRIAL DIVISION PHILADELPHIA COUNTY |
| Plaintiffs, vs. | APRIL TERM, 2012 |
| WYETH PHARMACEUTICALS, INC. 50 Arcola Road Collegeville, PA 19426 | NO. |
| WYETH, LLC 50 Arcola Road Collegeville, PA 19426 | JURY TRIAL DEMANDED |
| WYETH 50 Arcola Road Collegeville, PA 19426 | **COMPLAINT** |

Case ID: 120401876

PFIZER, INC.                              :
CT Corporation                            :
116 Pine Street, Suite 320                :
Harrisburg, PA 17101                      :

WOLTERS KLUWER HEALTH, INC.               :
CT Corporation                            :
116 Pine Street, Suite 320                :
Harrisburg, PA 17101                      :

                                          :
WOLTERS KLUWER UNITED STATES,             :
INC.                                      :
CT Corporation                            :
116 Pine Street, Suite 320                :
Harrisburg, PA 17101                      :

## COMPLAINT

1.      Plaintiffs, SADIE DECKER ("Mother Plaintiff") and ANTHONY DECKER ("Father Plaintiff"), individually and as Guardian for QUINTIN DECKER, ("Infant Plaintiff") a minor, (collectively "Plaintiffs") by and through their undersigned counsel, hereby submit this Complaint against Defendants WYETH PHARMACEUTICALS, INC., WYETH, LLC, WYETH, PFIZER, INC., WOLTERS KLUWER HEALTH, INC., and WOLTERS KLUWER UNITED STATES, INC. ("collectively "Defendants").

2.      As more specifically pleaded below, each Plaintiff maintains that the pharmaceutical drug EFFEXOR, EFFEXOR XR® and/or venlafaxine (hereinafter collectively "Effexor") is defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warnings as to the dangers associated with its use.

## I.    PLAINTIFFS

3.      Plaintiffs are individuals, or the duly authorized representative of individuals, who, at all times relevant to the allegations in the Complaint, are residents of the State of Missouri.

2

Case ID: 120401876

4.    The Infant Plaintiff, Quintin Decker, is a minor child who was born April 17, 2007, with craniosynostosis, and other related conditions as a result of his mother's ingestion of Effexor. The Infant Plaintiff is represented in this action by Mother Plaintiff and Father Plaintiff who are his natural guardians and next friend.

5.    The Mother Plaintiff Sadie Decker and the Father Plaintiff Anthony Decker referred to herein are competent adults and the biological parents of the Infant Plaintiff.  They bring this action on behalf of the Infant Plaintiff and individually to recover medical and other expenses related to treatment resulting from the Infant Plaintiff's birth defect(s), disorder(s) and/or related illnesses and for general and special damages, including punitive damages, and such other relief as requested herein for injuries suffered as a direct result of the Mother Plaintiff's ingestion of Effexor.

6.    At all times relevant to the allegations in the complaint, Plaintiffs resided in the United States of America or its territories.

7.    "Plaintiffs" as used herein refers to the Infant Plaintiff, Mother Plaintiff and Father Plaintiff, collectively.

## II.    DEFENDANTS

8.    Defendant, WYETH PHARMACEUTICALS, INC., has a principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.  Upon information and belief, Pennsylvania is the nerve center of Wyeth Pharmaceuticals, Inc.'s business as it was the site of the corporation's headquarters and the place where the corporation's officers would direct, control and coordinate the corporation's activities.  Upon information and belief, Wyeth Pharmaceuticals, Inc., was purchased by Pfizer, Inc., in October of 2009.  Wyeth

3

Case ID: 120401876

Pharmaceuticals, Inc., is now a subsidiary of Pfizer, Inc., and is located in Philadelphia, Pennsylvania.

9.      Defendant, WYETH, LLC, has a principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.   Upon information and belief,   Pennsylvania is the nerve center of Wyeth, LLC's business as it was the site of the corporation's headquarters and the place where the corporation's officers would direct, control and coordinate the corporation's activities.   Upon information and belief, Wyeth, LLC, was purchased by Pfizer, Inc., in October of 2009.   Wyeth, LLC, is now a subsidiary of Pfizer, Inc., and is located in Philadelphia, Pennsylvania.

10.      Defendant, WYETH, has a principal place of business at 500 Arcola Road, Collegeville, Pennsylvania 19426.   Upon information and belief,   Pennsylvania is the nerve center of Wyeth's business as it was the site of the corporation's headquarters and the place where the corporation's officers would direct, control and coordinate the corporation's activities. Upon information and belief, Wyeth was purchased by Pfizer, Inc., in October of 2009.   Wyeth is now a subsidiary of Pfizer, Inc., and is located in Philadelphia, Pennsylvania.

11.      Defendant, PFIZER, INC. was and still is a corporation duly existing under and by virtue of the laws of the State of Delaware with its principal place of business in the New York City, New York.   Pfizer's subsidiaries, Wyeth Pharmaceuticals, Inc., Wyeth, LL, and Wyeth are located in Philadelphia, Pennsylvania.   Pfizer may be served with process by serving it's registered agent CT Corporation, 116 Pine Street, Suite 320, Harrisburg, PA 17101.

12.      For   purposes   of   this   Complaint,   Plaintiffs   refer   to   WYETH PHARMACEUTICALS, INC., WYETH, LLC, WYETH and PFIZER, INC., as "Manufacturing Defendants", collectively.

4

Case ID: 120401876

13.     Defendant, WOLTERS KLUWER HEALTH, INC., was, and still is, a corporation organized under the laws of the State of Delaware with a principal place of business at 530 Walnut Street, 8 East, Philadelphia, Pennsylvania 19106.  Upon information and belief, Pennsylvania is the nerve center of WOLTERS KLUWER HEALTH, INC.'s business as it is the site of the corporation's headquarters and the place where the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend, 130* S.Ct. 1181 (2010).  WOLTERS KLUWER HEALTH, INC. may be served with process by serving it registered agent The CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.

14.     Defendant, WOLTERS KLUWER UNITED STATES, INC. is a corporation organized under the laws of the State of Delaware, which has its principal place of business located at 530 Walnut Street, 8 East, Philadelphia, PA 19106.   Upon information and belief, Pennsylvania is the nerve center of WOLTERS KLUWER UNITED STATES, INC.'s business as it is the site of the corporation's headquarters and the place where the corporation's officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend, 130* S.Ct. 1181 (2010).  WOLTERS KLUWER UNITED STATES, INC. may be served with process by serving its registered agent CT Corporation System at 116 Pine Street, Suite 320, Harrisburg, PA 17101.

15.     For purposes of this Complaint, Plaintiffs refer to WOLTERS KLUWER HEALTH, INC., and WOLTERS KLUWER UNITED STATES, INC., as "PEM Defendants", collectively.

### III.     JURISDICTION AND VENUE

16.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

5

17.     Jurisdiction and venue are proper as Defendants, and each of them, are subject to suit in the Commonwealth of Pennsylvania because presently, and at all times material to this action, Defendants maintained their principle place of business in Pennsylvania as determined under the "nerve center" test set forth in *Hertz Corp. v. Friend, 130* S.Ct. 1181 (2010). Additionally, Defendants regularly solicited and transacted business in the Commonwealth of Pennsylvania, received substantial revenues from the Commonwealth of Pennsylvania, and sold products and performed services in the Commonwealth of Pennsylvania. Defendants carried on a continuous and systematic part of their business in Pennsylvania and in Philadelphia County. Furthermore, as Defendants regularly solicited and transacted business, received substantial revenues from the Commonwealth of Pennsylvania, and/or distributed products in the Commonwealth of Pennsylvania and the City of Philadelphia, Defendants are subject to suit in the Commonwealth of Pennsylvania and Philadelphia County.   In addition, Defendants reasonably expected that their products, including Effexor and the patient education monograph ("PEM") for Effexor, would be used in Pennsylvania and Philadelphia County. Furthermore, a part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District.

18.     At all times material to this action, Defendant Pfizer and/or its predecessors in interest and/or its subsidiaries, including Wyeth Pharmaceuticals, Inc., Wyeth LLC and Wyeth regularly engaged in business in the Commonwealth of Pennsylvania and the County of Philadelphia, including advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing of the pharmaceutical drug Effexor. Defendant Pfizer carried on a continuous and systematic part of their business in Pennsylvania and in Philadelphia County.   Defendant Pfizer's subsidiaries, Wyeth Pharmaceuticals, Inc.,

Case ID: 120401876

Wyeth LLC and Wyeth, are located in Philadelphia, and distribute Effexor throughout the United States. Furthermore, as Defendant Pfizer regularly solicited and transacted business, received substantial revenues from the Commonwealth of Pennsylvania, and/or distributed products in the Commonwealth of Pennsylvania and the City of Philadelphia, Defendant Pfizer is subject to suit in the Commonwealth of Pennsylvania. In addition, Defendant Pfizer reasonably expected that Effexor would be used or consumed in Pennsylvania and Philadelphia County. Furthermore, a part of the events and omissions giving rise to Plaintiffs' injuries occurred in this District.

## IV.   GENERAL ALLEGATIONS

19.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

**Plaintiffs**

20.   The Mother Plaintiff took Effexor as prescribed by her treating physician(s) while pregnant with the Infant Plaintiff. The Mother Plaintiff continued to use Effexor on the schedule and for the period of time prescribed by the Mother Plaintiff's physician(s).

21.   The Mother Plaintiff and/or the Mother Plaintiff's physician relied upon the fact that any birth defects and other serious pregnancy issues associated with the use of Effexor would have been listed or emphasized on the Effexor drug information as a basis to believe that Effexor was safe for use during pregnancy and would not cause birth defects.

22.   Despite the exercise of reasonable diligence in investigating the cause of the injuries, including consultations with her medical care providers, the Mother Plaintiff was not told that Effexor could have caused the Infant Plaintiff's injuries. Nor did the Mother Plaintiff see or read any information suggesting Effexor caused the Infant Plaintiff's injuries until a date within the applicable statute of limitations for filing Plaintiffs' claims.

7

23.    Had the Mother Plaintiff been adequately warned that Effexor could cause congenital birth defects if ingested during pregnancy, she would not have taken the drug.

24.    When the Infant Plaintiff was born, he was suffering from life-threatening congenital defects.

25.    The defects suffered by the Infant Plaintiff were a direct result of his mother's ingestion of Effexor during her pregnancy in a manner and dosage recommended and prescribed by her doctor.

**Manufacturing Defendants**

26.    The drug "venlafaxine hydrochloride" was and is advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by Defendants, their predecessors in interest and its subsidiaries, under the trade name Effexor® and is a member of a class of drugs known as "serotonin and norepinephrine reuptake inhibitors" or "SNRIs." Effexor was first approved for use in the United States by the FDA in 1993 for the treatment of major depression in adults.

27.    Under the FDA scheme, Defendants, knew, as a New Drug Application applicant, that it must fully, truthfully and accurately disclose to the FDA data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiffs' physicians, Mother Plaintiff and other foreseeable prescribers and users of Effexor once the NDA was approved.

8

Case ID: 120401876

28.     Under the FDA scheme, Defendants had a duty to ensure its warnings to the medical community are and remain accurate and adequate, to conduct safety surveillance of adverse events for the drug, to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug, and to update the label when new safety information was obtained.

29.     Prior to Mother Plaintiff becoming pregnant, Defendants knew or should have known that taking Effexor during pregnancy posed risks to the developing fetus. Defendants knew or should have known that Effexor crosses the placenta, which could have important implications for the developing fetus.

30.     Prior to Mother Plaintiff becoming pregnant, Defendants knew or should have known that children were being born with congenital birth defects, heart defects, PPHN, and other similar conditions to women who took Effexor during pregnancy.

31.     Prior to the time that Mother Plaintiff ingested Effexor during her pregnancy, Defendants knew of the dangerous birth defects associated with Effexor's use during pregnancy from the preclinical studies and the subsequent published studies confirming these risks. Defendants took no action to adequately warn or remedy the risks, but instead, concealed, suppressed, and failed to disclose the dangers. Even in the face of the numerous published studies, Defendants continue to fail to warn of these dangers through revised drug labeling.

32.     Defendants had access to this information and knew that congenital birth defects would result from the use of Effexor by women who became pregnant and the fact that physicians and the consumers such as the Mother Plaintiff herein did not fully understand the risks associated with Effexor.

9

Case ID: 120401876

33.     Defendants failed to fully, truthfully and accurately disclose Effexor data to the FDA, the Plaintiffs and the Mother Plaintiff's physicians, and as a result negligently, intentionally and fraudulently misled the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs about the risks to a fetus associated with the use of Effexor during pregnancy.

34.     Through the *Physicians' Desk Reference*, drug package inserts, patient information forms, counseling warnings, literature, marketing materials and other labeling information for Effexor, Defendants knowingly, intentionally and negligently disseminated incomplete, inaccurate, and/or misleading warnings and information about the true risks to a fetus when Effexor is ingested during pregnancy, which misled the medical community, physicians and the Mother Plaintiff's physicians.

35.     At all times material hereto, Defendants knew or should have known that most physicians were not aware of or did not fully appreciate the seriousness of the congenital birth defect risks associated with use of Effexor and that, consequently, there was a widespread tendency for physicians to prescribe Effexor for use to women of childbearing potential. Consequently, Defendants knew or should have known that the warnings and labels, including but not limited to, package inserts and the *Physician's Desk Reference* monograph for Effexor, did not adequately Defendants physicians about the birth defects risks associated with Effexor.

36.     Defendants failed to warn physicians and the Mother Plaintiff herein adequately about the congenital birth defect risks associated with Effexor, despite the fact that Defendants knew that physicians, the medical community, the Plaintiffs, and others similarly situated relied on Defendants to disclose what it knew or should have known from a prudent review of the information that it possessed or to which it had access.

10

Case ID: 120401876

37.     Because of the misleading information that Defendants provided to physicians, the Plaintiffs and the FDA about the true congenital birth defect risks associated with the use of Defendants and because of the failure of Defendants to adequately inform physicians generally, including the Mother Plaintiff's physicians, about the true birth defect risks associated with the use of Effexor the Mother Plaintiff's physicians never informed her of any congenital birth defects risks associated with Effexor.   Indeed, it is believed that Defendants represented to physicians that Effexor was safe for use by women of childbearing years and their unborn children.

38.     Defendants knew, or should have known, that the warnings, including but not limited to, the label and package insert for Effexor did not disclose the true risks of birth defects from the use of Effexor. Defendants failed to use reasonable care to modify the warnings, including but not limited to, the label and package insert for Effexor in order to warn physicians adequately about the true congenital birth defect risks from the use of Effexor by women who became pregnant.

39.     During the entire time Effexor has been on the market in the United States, FDA regulations have required Defendants to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and Effexor.   The regulations specifically state that a causal link need not have been proven to issue the new warnings. Further, the regulations explicitly allowed Defendants to issue such a warning without prior FDA approval.

40.     Thus, prior to the Mother Plaintiff's pregnancy, Defendants had the knowledge, the means, and the duty to provide the medical community and the consuming public with a stronger warning regarding the association between Effexor and congenital birth defects, heart

11

defects, PPHN, and other related conditions, through all means necessary, including, but not limited to, labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements, and promotional materials, etc. Defendants breached this duty.

41.    Despite having extensive knowledge of the extreme risks associated with the Effexor, as well as the absolute duty to properly and adequately warn foreseeable users, Defendants never approached the FDA to alter the label for Effexor so that it properly and adequately warned of the risks of birth defects associated with the drug.

42.    Defendants failed to disclose adequately the increased risk of congenital birth defects of Effexor to the medical community and the Plaintiffs. Defendants was aware that its failure to disclose this information to the medical community and the Plaintiffs would result in serious injury and/or death to the children or unborn fetus of women who were prescribed Effexor by a physician who was not aware of this information.  By failing to disclose this information to the medical community and the Plaintiffs, Defendants acted in willful, wanton and outrageous manner and with evil disregard of the rights of the Plaintiffs and this conduct caused serious and permanent injuries to the Plaintiffs.

43.    Defendants, its agents, servants and employees acting in the course and scope of their employment, negligently and carelessly breached their duties to the medical community, Plaintiffs' physicians, Plaintiffs and other foreseeable users similarly situated, which breaches of duty include, but are not limited to:

    a)    failing to ensure Effexor warnings to the medical community, physicians, the Mother Plaintiff's physicians and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with the drug;

    b)    failing in its obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate and clinically relevant information, data and

12

Case ID: 120401876

warnings regarding the adverse health risks associated with exposure to Effexor, and/or that there existed safer and more or equally effective alternative drug products;

c)    failing to conduct post market safety surveillance and report that information to the medical community, physicians, the Mother Plaintiff's physicians and Plaintiffs;

d)    failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Effexor;

e)    failing to continually monitor, test, and analyze data regarding safety, efficacy and the prescribing practices for Effexor;

f)    failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Effexor to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

g)    failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, congenital birth defects of Effexor;

h)    failing to periodically review all medical literature regarding Effexor and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Effexor;

i)    failing to disclose the results of the testing and other information in its possession regarding the possibility that Effexor can interfere with the proper development of an unborn fetus;

j)    failing to warn adequately the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs of the dangers of using Effexor during pregnancy, including the risk of congenital birth defects;

13

Case ID: 120401876

k)      representing that Effexor was safe for use during pregnancy
        when, in fact, Defendants knew or should have known that
        it was unsafe for this use and that Effexor was associated
        with congenital birth defects;

l)      promoting and marketing Effexor for use with pregnant
        women, despite the fact that WYETH knew or should have
        known that Effexor was associated with an increased risk
        of congenital abnormalities;

m)      promoting and marketing Effexor as safe and effective for
        use with pregnant women when, in fact, it was unsafe;

n)      promoting and marketing Effexor for non-approved (off-
        label) uses and/or illegally over-promoting, marketing,
        advertising and selling Effexor in a zealous and
        unreasonable way, without regard to the potential danger
        that it poses for an unborn fetus;

o)      failing to independently monitor their sales of Effexor and
        the medical literature, which would have alerted them to
        the fact that Effexor was widely over-prescribed to women
        of childbearing potential as a result of inadequate warnings,
        including those in the package inserts and PDR
        monographs for Effexor, and as a result of the over-
        promotion of the drug;

p)      failing to act as a reasonably prudent drug manufacturer in
        advertising, analyzing, assembling, compounding,
        designing, developing, distributing, formulating,
        inspecting, labeling, manufacturing, marketing, packing,
        producing, promoting, processing, researching, selling and
        testing of Effexor; and/or

q)      failing to perform adequate and necessary studies to
        determine and analyze the safety and risks associated with
        Effexor use.

44.     As a direct and proximate result of Defendants' actions, Plaintiffs, and upon

information and belief, Mother Plaintiff's prescribing physicians, were unaware, and could not

reasonably know, or through reasonable diligence could not have reasonably known, that Effexor

14

exposed the Plaintiffs to the risks and injuries alleged herein, and that those risks were the direct and proximate result of Defendants' acts and omissions.

**Wolters Kluwer**

45.     At all times relevant to this Complaint, the PEM Defendants, was in the business of authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying prescription drug information, labels, patient education monographs ("PEM"), patient inserts, warnings and literature. The prescription drug information, labels, patient education monographs, patient inserts, warnings and literature was intended by PEM Defendants to be provided directly to consumers by their pharmacists for the purpose of warning consumers about the risks and side effects of the drugs, including Effexor, which the consumer was taking.

46.     Upon information and belief, PEM Defendants, voluntarily and for profit, undertook to author, analyze, create, compile, design, draft, disseminate, distribute, edit, evaluate, market, modify, publish and supply drug information, labels, patient education monographs, patient inserts, warnings and literature on drugs, including Effexor. PEM Defendants therefore owed a duty of due care to the medical community, pharmacists and the Plaintiffs pursuant to common law, statute, regulations and/or industry standards to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete drug information, labels, patient education monographs, patient inserts, warnings and literature regarding Effexor.

47.     The drug information, labels, patient education monographs, patient inserts, warnings and literature prepared by PEM Defendants were placed in the form that was intended to reach, and did reach, pharmacy customers, including the Plaintiffs herein. The monographs prepared by PEM Defendants are marketed as enhancing patient safety and reducing adverse

Case ID: 120401876

drug events by providing comprehensive, authoritative, and unbiased presentations of drug information.

48. PEM Defendants contracted with Plaintiffs' pharmacies to provide drug information, labels, patient education monographs, patient inserts, warnings and literature regarding Effexor which PEM Defendants knew would be provided to Plaintiff at the time the drug Effexor was delivered to consumers, including the Plaintiffs herein.

49. At the time that the Mother Plaintiff filled the prescription for Effexor, the Mother Plaintiff was provided with a printed label, monograph and/or insert, containing information regarding the drug Effexor. The substance of the label, monograph and/or insert provided to the Mother Plaintiff with the Effexor prescription was authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, modified, published and supplied, directly or indirectly, by PEM Defendants.

50. Having voluntarily and for profit, undertaken to instruct, advise, and warn consumers regarding the dangers and risks of using Effexor, PEM Defendants have a duty to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings in the written Effexor drug information, labels, patient education monographs, patient inserts, warnings or literature that it authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, modifying, published, supplied and made available for the ultimate purpose of informing consumers, including the Plaintiffs.

51. PEM Defendants breached their duty of care, by directly or indirectly, negligently and/or defectively, authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, modifying, publishing and supplying prescription drug information, labels, patient education monographs, patient inserts, warnings and literature

Case ID: 120401876

that were unsuitable for their intended purpose of warning consumers about the risks and side effects of Effexor, particularly the risks and side effects relating to congenital birth defects.

52.     PEM Defendants had actual and/or constructive knowledge that pharmacists, medical professionals, and consumers, such as Plaintiffs, would rely upon the information and warnings disseminated in their drug information, labels, patient education monographs, patient inserts, warnings and literature for Effexor, and that many patients, in accordance with their prescription and the information and warnings disseminated in PEM Defendants' drug information, labels, patient education monographs, patient inserts, warnings and literature for Effexor, would be likely to be prescribed, receive and ingest Effexor.

53.     Wolters Kluwer knew, or should have known, that the incomplete, inaccurate, and misleading information and warnings disseminated in their drug information, labels, patient education monographs, patient inserts, warnings and literature for Effexor it supplied to consumers, such as Plaintiffs, created an unreasonable risk of injury, including an unreasonable risk of congenital birth defects to a developing fetus.

54.     It was foreseeable that PEM Defendants' failure to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings regarding Effexor could cause harm to consumers, including the Plaintiffs herein, could increase the risk of harm to consumers, including the Plaintiffs herein, and that consumers, including the Plaintiff herein, could forseeably suffer harm because of their reliance on the PEM Defendant's undertaking to provide information and warnings about Effexor, that was intended to be provided directly to, or made available to consumers, including the Plaintiff herein.

55.     PEM Defendants promotes itself as an unbiased supplier of up to date scientific drug information. It claims that its drug database and information reduce adverse drug events.

17

Case ID: 120401876

PEM Defendants also touts the monographs it provides as being comprehensive, authoritative, and unbiased presentations of key drug information to customers and patients. Further, on its website PEM Defendants claims the following concerning its prescription drug information:

> "[u]p-to date and comprehensive, our drug databases provide clinicians, pharmacists, payers and pharmaceutical companies with the reliable drug information they need to work efficiently and protect patients. From databases with drug product and pricing information to clinical decision support databases that identify drug conflicts, to consumer-oriented information written to educate patients about their drug therapy, we have a database for most applications' needs across the health care continuum.[1]
> . . .
> Medi-Span®, a part of Wolters Kluwer Health, is the leading provider of prescription drug information and drug interactions database solutions for thousands of health care professionals worldwide.[2]

In truth, PEM Defendants failed to ensure that the prescription drug information and warnings it provided regarding Effexor was truthful, accurate, adequate, useful, appropriate, up-to-date and complete.

56.     As a direct and proximate result of PEM Defendants' actions, Plaintiffs, and upon information and belief, Mother Plaintiff's prescribing physicians and pharmacists, were unaware, and could not reasonably know, or through reasonable diligence could not have reasonably known, that Effexor exposed the Plaintiffs to the risks and injuries alleged herein, and that those risks were the direct and proximate result of PEM Defendants' acts and omissions.

**Injuries**

57.     As a direct and proximate result of the conduct of Defendants as described herein and as a result of the Mother Plaintiff's ingestion of Effexor, the Infant Plaintiff suffers from physical injuries, some or all of which are permanent and/or may be fatal, and the Infant Plaintiff

---

1   Wolters Kluwer Medi-span product webpage, http://www.medi-span.com/drug-database.aspx (Aug. 5, 2011).
2   Wolters Kluwer Medi-span product webpage, http://www.medi-span.com/index.aspx (Aug. 5, 2011).

18

Case ID: 120401876

may suffer in the future from other diseases or conditions which have not yet been diagnosed. Further, the Infant Plaintiff has sustained in the past, and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, psychological injury, disability, disfigurement caused by the surgeries and procedures the Infant Plaintiff has already undergone, and the surgeries and procedures that Infant Plaintiff will need to undergo in the future, and the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, and/or other related conditions, as well as past and future general and special damages, including past and future medical care and treatment, lost wages and lost earning capacity.

58.      Infant Plaintiff's serious and permanent injuries were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, physicians, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

59.      As a direct and proximate result of the conduct of Defendants as described herein, Mother Plaintiff has suffered and will in the future continue to suffer medical, nursing, hospital, pharmacy, rehabilitative and related costs and expenses for the Infant Plaintiff's injuries and care, along with lost wages, lost earning capacity, economic losses, and other damages for which they are entitled to compensation. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

60.      The Parent Plaintiffs, as result of the Mother Plaintiff's ingestion of Effexor and as a direct and proximate result of the conduct of Defendants described herein, have suffered,

19

and will suffer in the future, great emotional pain, mental anguish and other serious injury and loss, including loss of consortium, services, support, companionship, society, love and affection. These injuries and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Mother Plaintiff's physicians, pharmacists and Plaintiffs.

61.    The Defendants are liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

## V.    DISCOVERY RULE, TOLLING AND FRAUDULENT CONCEALMENT

62.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

63.    Plaintiffs assert all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, class action tolling, delayed discovery, discovery rule, fraudulent concealment, and/or minority tolling.

64.    Plaintiffs plead that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiffs had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

65.    Despite diligent investigation by Plaintiffs into the cause of their injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages, and their relationship to Effexor was not discovered, and through reasonable care and due diligence could not have been discovered, until a date within the applicable statute of

Case ID: 120401876

limitations for filing Plaintiffs' claims. Therefore, under appropriate application of the discovery rule, Plaintiffs' suit was filed well within the applicable statutory limitations period.

66.    The running of the statute of limitations in this cause is tolled due to equitable tolling.   Defendants are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and Plaintiff's physicians and pharmacists of the true risks associated with taking Effexor. As a result of Defendants' fraudulent concealment, Plaintiffs and Plaintiff's prescribing physicians and pharmacists were unaware, and could not have known or have learned through reasonable diligence that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the wrongful acts and omissions of the Defendants.

67.    The running of the statute of limitations in this cause may be tolled due to the pendency of a class action proceeding against one or more of the Defendants herein.   Class Action tolling is proper where Plaintiffs are members of an asserted class and the claims asserted in the class action proceeding are the same as the claims asserted in this action.

68.    The statute of limitations is tolled due to the minority of the Plaintiff.   Plaintiff was a minor at the time Plaintiff ingested Effexor.   This action was filed within the applicable statutory period after Plaintiff achieved the age of majority.

69.    The statute of limitations is tolled due to the minority of the Plaintiff. This action was filed within the applicable statutory period after Plaintiff achieved the age of majority.

70.    The statute of limitations is tolled due to the disability of Plaintiffs.   Plaintiffs were under one or more of the following recognized disabilities:   mental illness, infancy, insanity, inability to comprehend the nature of legal proceedings, imprisonment, absence from

Case ID: 120401876

the state due to government service, or other legal disability recognized by the applicable state law.

71.     Defendants are estopped from asserting a statute of limitations defense because all Defendants fraudulently concealed from Plaintiffs the nature of Plaintiffs' injury and the connection between the injury and Defendants' tortious conduct.

## VI.     CLAIMS FOR RELIEF

72.     The Plaintiffs set forth the following statements and claims in the alternative such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency (if any) among any one or more of the alternative statements or claims.

## COUNT ONE – STRICT PRODUCT LIABILITY – FAILURE TO WARN

### (As Against Manufacturing Defendants)

73.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

74.     Manufacturing Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for the negligent and/or willful failure to provide adequate warnings and other clinically relevant information and data regarding the appropriate use of Effexor to the Plaintiffs and the Mother Plaintiff's prescribing physicians.

75.     Pfizer and Wyeths, as a manufacturers of pharmaceutical drugs, is held to the level of knowledge of an expert in the field, and further, Manufacturing Defendants knew or should have known that the warnings and other clinically relevant information and data which they distributed regarding the risks of congenital birth defects associated with the use of Effexor were inadequate.

Case ID: 120401876

76.    Plaintiffs, and the Mother Plaintiff's prescribing physicians, did not have the same knowledge as Manufacturing Defendants and no adequate warning or other clinically relevant information and data was communicated to them or to their physicians.

77.    Manufacturing Defendant had a continuing duty to provide consumers, including Plaintiffs and their physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Effexor as it became or could have become available to Manufacturing Defendant.

78.    Manufacturing Defendants manufactured, marketed, promoted, distributed, and sold an unreasonably dangerous and defective prescription drug, Effexor in the stream of commerce, to health care providers empowered to prescribe and dispense Effexor to consumers, including Mother Plaintiff, without adequate warnings and other clinically relevant information and data.  Through both omissions and affirmative misstatements, Manufacturing Defendants misled the medical community about the risks and benefits of Effexor, which resulted in injury to Plaintiffs.

79.    Despite the fact that Manufacturing Defendants knew or should have known that Effexor caused unreasonable and dangerous side effects, including congenital birth defects, they continued to manufacture, market, promote, distribute, and sell Effexor without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

80.    Manufacturing Defendants knew or should have known that consumers and Plaintiffs specifically, would foreseeably and needlessly suffer injury as a result of the Manufacturing Defendants' failures.

Case ID: 120401876

81.   Manufacturing Defendants breached their duty to provide timely and adequate warnings, instructions, and information, in the following particulars:

a)   failing to ensure Effexor warnings to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs were accurate and adequate despite having extensive knowledge of the risks associated with Effexor;

b)   failing in their obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Effexor, and/or that there existed safer and more or equally effective alternative drug products;

c)   failing to conduct post market safety surveillance and report that information to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

d)   failing to include adequate warnings and/or providing adequate and clinically relevant information and data that would alert the medical community, the Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Effexor, including, among other things, the association with congenital birth defects;

e)   failing to continually monitor, test, and analyze data regarding safety, efficacy, and prescribing practices of their marketed drugs, including Effexor;

f)   failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Effexor to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

g)   failing to provide adequate post-marketing warnings and instructions after Manufacturing Defendants knew or should have known of the significant risks of, among other things, congenital birth defects of Effexor;

h)   failing to periodically review all medical literature regarding Effexor and failing to report data, regardless of

24

Case ID: 120401876

the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy, or safety of Effexor;

i)    failing to disclose the results of the testing and other information in their possession regarding the possibility that Effexor can interfere with the proper development of an unborn fetus;

j)    failing to warn adequately the medical community, the general public, and Plaintiffs of the dangers of using Effexor during pregnancy, including the risk of congenital birth defects; and/or

k)    representing that Effexor was safe for use during pregnancy, when in fact, Manufacturing Defendants knew or should have known that Effexor was unsafe for this use and that Effexor was associated with congenital birth defects.

82.    Manufacturing Defendants continued to aggressively manufacture, market, promote, distribute, and sell Effexor, even after they knew or should have known of the unreasonable risks of congenital birth defects from Effexor.

83.    Manufacturing Defendants had an obligation to provide Plaintiffs and the Mother Plaintiff's physicians with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Effexor, and/or that there existed safer and more or equally effective alternative drug products.

84.    By failing to provide Plaintiffs and the Mother Plaintiff's physicians with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Effexor, and/or to inform them that there existed safer and more or equally effective alternative drug products, Manufacturing Defendants breached their duty of reasonable care and safety.

25

Case ID: 120401876

85.     As a direct and proximate result of the actions and inactions of Manufacturing Defendants as set forth above, Plaintiffs were exposed to Effexor, as a result suffered, and continue to suffer, the injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TWO – STRICT PRODUCT LIABILITY – DESIGN DEFECT

### *(As Against Manufacturing Defendants)*

86.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

87.     Manufacturing Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts.

88.     Manufacturing Defendants manufactured, marketed, promoted, distributed, and sold Effexor in the stream of commerce which was:

a)      unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

b)      defective in design and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks which exceeded the benefits of Effexor;

c)      defective in design, making use of Effexor more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Plaintiff's underlying condition;

d)      defective in design, making use of Effexor more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

26

Case ID: 120401876

    e)      defective in design in that Effexor contained insufficient, incorrect, and defective warnings in that they failed to alert physicians and users, including Plaintiffs, of the risks of adverse effects; and/or

    f)      defective in design in that Effexor was not safe for its intended use and was inadequately tested.

89.    Manufacturing Defendants knew and intended that Effexor would be used by consumers, including the Mother Plaintiff, without any inspection for defects, and that the Mother Plaintiff and her physicians would rely upon the representations made by Manufacturing Defendants on Effexor's product labels and otherwise.

90.    Prior to the manufacturing, sale, and distribution of Effexor, Manufacturing Defendants knew, or was reckless in not knowing, that Effexor was in a defective condition.

91.    The Mother Plaintiff used Effexor for its intended purpose and could not have discovered any defect therein through the exercise of due care.

92.    At the time that Manufacturing Defendants manufactured, marketed, promoted, distributed, and sold Effexor there existed safer and more or equally effective alternative drug products.

93.    As a direct and proximate result of the actions and inactions of Manufacturing Defendants as set forth above, Plaintiffs were exposed to Effexor, and as a result, suffered, and continue to suffer, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT THREE – NEGLIGENCE

Case ID: 120401876

*(As Against Manufacturing Defendants)*

94.     Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

95.     Manufacturing Defendants are liable to Plaintiffs pursuant to state common law and/or state Product Liability Acts due to their negligent advertizing, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling and testing Effexor.

96.     At all times mentioned herein, Manufacturing Defendants was under a duty to exercise reasonable care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Effexor to ensure that use of Effexor did not result in avoidable injuries.

97.     At all times relevant to this lawsuit, Manufacturing Defendants owed a duty to consumers, including Plaintiffs and their health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Effexor, and to warn the medical community, consumers, the Plaintiffs, and the Mother Plaintiff's physicians of those risks, dangers, and adverse effects.

98.     Manufacturing Defendants' duties included, but were not limited to, carefully and properly advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Effexor, which was placed in the stream of commerce, and providing adequate information regarding the appropriate use of Effexor.

Case ID: 120401876

99.   Manufacturing Defendants negligently and carelessly breached the above-described duties to Plaintiffs by committing negligent acts and/or omissions, including, but not limited to, the following:

a)   failing to ensure Effexor's warnings to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs were accurate and adequate, despite having extensive knowledge of the risks associated with Effexor;

b)   failing in their obligation to provide the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Effexor, and/or that there existed safer and more or equally effective alternative drug products;

c)   failing to conduct post market safety surveillance and report that information to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

d)   failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs to the dangerous risks of Effexor;

e)   failing to continually monitor, test, and analyze data regarding safety, efficacy, and the prescribing practices for Effexor;

f)   failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Effexor to the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs;

g)   failing to provide adequate post-marketing warnings and instructions after Manufacturing Defendant knew or should have known of the significant risks of, among other things, congenital birth defects of Effexor;

29

Case ID: 120401876

h)      failing to periodically review all medical literature regarding Effexor and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Effexor;

i)      failing to disclose the results of the testing and other information in their possession regarding the possibility that Effexor can interfere with the proper development of an unborn fetus;

j)      failing to warn adequately the medical community, physicians, the Mother Plaintiff's physicians, and Plaintiffs of the dangers of using Effexor during pregnancy, including the risk of congenital birth defects;

k)      representing that Effexor was safe for use during pregnancy when, in fact, Manufacturing Defendant knew or should have known that Effexor was unsafe for this use and that Effexor was associated with congenital birth defects;

l)      promoting and marketing Effexor for use with pregnant women, despite the fact that the Manufacturing Defendant knew or should have known that Effexor was associated with an increased risk of congenital abnormalities;

m)      promoting and marketing Effexor as safe and effective for use with pregnant women when, in fact, it was unsafe;

n)      promoting and marketing Effexor for non-approved (off-label) uses and/or illegally over-promoting, marketing, advertising, and selling Effexor in a zealous and unreasonable way, without regard to the potential danger that it posed for an unborn fetus;

o)      failing to independently monitor their sales of Effexor and the medical literature, which would have alerted them to the fact that Effexor was widely over-prescribed to women of childbearing potential as a result of inadequate warnings in the package inserts and PDR monographs for Effexor, and as a result of the over-promotion of Effexor;

p)      failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing,

Case ID: 120401876

producing, promoting, processing, researching, selling, and testing Effexor;

q)  failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Effexor's use;

r)  failing to use ordinary care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and testing Effexor so as to reveal and communicate the risk of congenital birth defects to the medical community, the Mother Plaintiff's physicians, and Plaintiffs;

s)  failing to accompany Effexor with adequate information that would alert the medical community, the Mother Plaintiff's physicians, and Plaintiffs to the potential adverse side effects associated with the use of Effexor and the nature, severity, and duration of such adverse effects;

t)  failing to conduct adequate post-marketing studies, non-clinical and clinical testing, and post-marketing surveillance and analyses to determine and communicate the safety profile and side effects of Effexor;

u)  continuing to promote the safety and effectiveness of Effexor, while downplaying their risks, even after Manufacturing Defendants knew or should have known of the risks of Effexor;

v)  failing to provide consumers, such as Plaintiffs and Plaintiffs' physicians, with scientific data which indicated that Effexor was unreasonably dangerous, and that there were no women of childbearing potential and/or pregnant women in whom the benefits of Effexor outweighed the risks;

w)  being careless and negligent in that Manufacturing Defendants knew or should have known that Effexor was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

31

    x)     negligently and carelessly promoting Effexor as safe and effective for use with women of childbearing potential and/or pregnant women when, in fact, it was unsafe;

    y)     negligently and carelessly over-promoting Effexor in a zealous and unreasonable way, without regard to the potential danger that it posed to an unborn fetus; and/or

    z)     negligently and carelessly failing to act as a reasonably prudent drug manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

100.    Although Manufacturing Defendants knew or should have known that Effexor caused unreasonably dangerous side effects, including congenital birth defects, Pfizer continued to market Effexor, despite the fact there were safer and more or equally effective alternative drug products.

101.    Manufacturing Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Manufacturing Defendants' failure to exercise ordinary care, as described above.

102.    The conduct of Manufacturing Defendants was a direct and proximate cause of Plaintiffs' injuries. Manufacturing Defendant knew or should have known that Effexor could be dangerous and unsafe for pregnant women and the developing fetus.

103.    As a direct and proximate result of the negligent acts and/or omissions of Manufacturing Defendants as set forth above, Plaintiffs suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

Case ID: 120401876

## COUNT FOUR – NEGLIGENT DESIGN

*(As Against Manufacturing Defendants)*

104.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full

herein.

105.   Manufacturing Defendants are liable to Plaintiffs under state common law and/or

the applicable state Product Liability Acts for the negligent design of Effexor.

106.   At all times relevant to this lawsuit, Manufacturing Defendants owed a duty to

consumers, including Plaintiffs and their health care providers, to exercise reasonable care in the

design of Effexor.

107.   Manufacturing Defendants negligently and carelessly breached this duty of care to

Plaintiffs because they designed Effexor which:

<blockquote>

a)   was and is unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

b)   was and is defective in design and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks which exceeded the benefits of Effexor;

c)   was and is defective in design, making use of Effexor more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with the Mother Plaintiff's underlying condition;

d)   was and is defective in design, making use of Effexor more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

e)   was and is defective in design in that it contained insufficient, incorrect and defective warnings in that they failed to alert physicians and users, including the Mother Plaintiff of the risks of adverse effects;

</blockquote>

33

Case ID: 120401876

f)  was and is defective in design in that it was not safe for its intended use and was inadequately tested;

g)  was and is defective in design because its risks exceeded any benefit of Effexor; and/or

h)  failed to act as a reasonably prudent drug manufacturer, seller, promoter, distributor, or marketer would have acted with respect to the design of Effexor.

108.  As a direct and proximate result of the negligent acts and/or omissions of the Manufacturing Defendants, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FIVE – FRAUD, MISREPRESENTATION AND SUPPRESSION

*(As Against Manufacturing Defendants)*

109.  Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

110.  Manufacturing Defendants are liable to Plaintiffs under the state common law and/or state Product Liability Acts for fraudulently, intentionally, and/or negligently misrepresenting to the public, and to Plaintiffs, both directly and by and through the Mother Plaintiff's prescribing physicians, the safety and effectiveness of Effexor when used by women of childbearing potential, and/or fraudulently, intentionally, and/or negligently concealing, suppressing or omitting material, adverse information regarding the safety and effectiveness of Effexor when used by women of childbearing potential.

Case ID: 120401876

111.   Manufacturing Defendants' fraudulent, intentional, and/or negligent material misrepresentations and omissions regarding the safety and efficacy of Effexor and of Effexor's side effects, including the risk of congenital birth defects, were communicated to Plaintiffs directly through promotional materials, advertising, product inserts, and the monograph provided with Plaintiff's prescription with the intent that the Mother Plaintiff use Effexor.  The safety and efficacy of Effexor was also fraudulently, intentionally, and/or negligently misrepresented to the Mother Plaintiff's prescribing physician with the intent that such misrepresentations would cause Effexor to be prescribed to the Mother Plaintiff.

112.   Manufacturing Defendants either knew or should have known that the material representations they were making regarding Effexor's safety, efficacy, and side effects were false.

113.   Manufacturing Defendants fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce the Mother Plaintiff, the Mother Plaintiff's physician, and the consuming public to use and prescribe Effexor.  Manufacturing Defendants fraudulently, intentionally, and/or negligently knew or should have known that the Mother Plaintiff, the Mother Plaintiff's physician, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Effexor for the treatment of the Mother Plaintiff.  Manufacturing Defendants knew or should have known that the Mother Plaintiff and the Mother Plaintiff's physician would rely upon their false representations and/or omissions.

114.   Manufacturing Defendants made these material misrepresentations and/or omissions and actively concealed adverse information at a time when they, their agents and/or their employees knew or should have known that Effexor had defects, dangers, and

35

Case ID: 120401876

characteristics that were other than what had been represented to the medical community and the consuming public, including the Plaintiffs herein. Those misrepresentations and omissions further include, but are not limited to, the following particulars:

a)   Manufacturing Defendants failed to disclose or concealed that their pre-clinical and clinical testing, and post-marketing surveillance was inadequate to determine the safety and side effects of Effexor;

b)   Manufacturing Defendants failed to disclose or concealed data showing that Effexor increased the risk of congenital birth defects;

c)   Manufacturing Defendants failed to include adequate warnings with Effexor about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including, without limitation, the increased risk of congenital birth defects, other injuries and death, either compared to the use of alternative drug products in its class or compared to the use of no drug products; and/or

d)   Manufacturing Defendants concealed and continues to conceal past and present facts, including that as early as the 1990's, Manufacturing Defendants was aware of and concealed their knowledge of an association between the use of Effexor and dangerous side effects, including the increased risk of congenital birth defects, from the consuming public, including Plaintiffs and the Mother Plaintiff's physicians.

115.   Manufacturing Defendants' material misrepresentations and/or active concealment, suppression, and omissions were perpetuated directly and/or indirectly by Manufacturing Defendants, their sales representatives, employees, distributors, agents, and/or detail persons, through the databases, printouts, monographs, and other information drafted, prepared, marketed, sold, and supplied by Manufacturing Defendants, their sales representatives, employees, distributors, agents, and/or detail persons.

36

Case ID: 120401876

116.   Manufacturing Defendants' material misrepresentations and/or active concealment, suppression, and omissions constitute a continuing tort.

117.   Through its product inserts, Manufacturing Defendants continued to misrepresent the potential risks and complications associated with Effexor.

118.   Manufacturing Defendants had a post-sale duty to warn physicians and Plaintiffs about the potential risks and complications associated with Effexor they manufactured and sold in a timely manner.

119.   Manufacturing Defendants fraudulently, intentionally, and/or negligently misrepresented the safety and efficacy of Effexor in their labeling, advertising, product inserts, promotional materials, or other marketing.

120.   If Plaintiffs and the Mother Plaintiff's physicians had known the true facts concerning the risks of Effexor, in particular, the risk of congenital birth defects, they would not have prescribed and used Effexor, and would have instead prescribed and used one of the safer alternatives, or no drug.

121.   Plaintiffs' and Plaintiff's physicians' reliance upon the Manufacturing Defendants' material misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Effexor, while Plaintiffs and Plaintiff's physicians were not in a position to know the true facts, and because Manufacturing Defendants overstated the benefits and safety of Effexor, and concomitantly downplayed the risks of its use, including congenital birth defects, thereby inducing the Mother Plaintiff and the Mother Plaintiff's physician to use Effexor, in lieu of other, safer alternatives, or no drug at all.

Case ID: 120401876

122.   As a direct and proximate result of the Plaintiffs' and the Mother Plaintiff's physicians' reliance on Manufacturing Defendants' misrepresentations and concealment concerning the risks and benefits of Effexor, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SIX – CONSTRUCTIVE FRAUD

*(As Against Manufacturing Defendants)*

123.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

124.   Manufacturing Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for constructive fraud in the manufacturing, distribution, and sale of Effexor.

125.   At the time Effexor was manufactured, distributed, and sold by Manufacturing Defendant to Plaintiffs, Manufacturing Defendants was in a unique position of knowledge concerning the safety and effectiveness of Effexor, which knowledge was not possessed by Plaintiffs or the Mother Plaintiff's physicians, and Manufacturing Defendants thereby held a position of superiority over Plaintiffs.

126.   Through their unique knowledge and expertise regarding the defective nature of Effexor, and through their marketing statements to physicians and patients in advertisements, promotional materials, and other communications, Manufacturing Defendants professed that they

Case ID: 120401876

were in possession of facts demonstrating that Effexor was safe and effective for its intended use and was not defective.

127.    Manufacturing Defendants' representations to the Mother Plaintiff's physicians were made to induce the purchase of Effexor, and Plaintiffs and their physicians relied upon those statements when purchasing and administering Effexor.

128.    Manufacturing Defendants took unconscionable advantage of their dominant position of knowledge with regard to Plaintiffs and their physicians and engaged in constructive fraud in their relationship.

129.    Plaintiffs and the Mother Plaintiff's physicians reasonably relied on Manufacturing Defendant's representations.

130.    As a direct and proximate result of Manufacturing Defendants' constructive fraud, Plaintiffs have suffered injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SEVEN – BREACH OF EXPRESS AND IMPLIED WARRANTIES

*(As Against Manufacturing Defendants)*

131.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

132.    Manufacturing Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for the breach of express and implied warranties of Effexor.

39

Case ID: 120401876

133. At all times hereinafter mentioned, upon information and belief, Manufacturing Defendants, by directly and indirectly advertising, marketing, and promoting Effexor for the treatment of women, including women of childbearing potential and pregnant women, and by placing Effexor in the stream of commerce knowing that Effexor would be prescribed to pregnant women in reliance upon the representations or omissions of Manufacturing Defendants, expressly warranted to all foreseeable users of Effexor, including the Mother Plaintiff and the Mother Plaintiff's physicians, that Effexor was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

134. Manufacturing Defendants impliedly warranted in manufacturing, distributing, selling, advertising, marketing, and promoting Effexor to all foreseeable users, including the Mother Plaintiff and the Mother Plaintiff's physicians, that Effexor was safe and effective for the purposes for which it had been placed in the stream of commerce by Manufacturing Defendants, including for the treatment of pregnant women, and that Effexor was reasonably safe, proper, merchantable, and fit for its intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

135. At all time relevant hereto, Plaintiffs and the Mother Plaintiff's physicians relied upon the aforesaid express and implied warranties by Manufacturing Defendants.

136. The Mother Plaintiff's use of Effexor, and the Mother Plaintiff's physicians' prescribing of Effexor was consistent with the purposes for which Manufacturing Defendants directly and indirectly advertised, marketed, and promoted Effexor, and the Mother Plaintiff's use of Effexor, and the Mother Plaintiff's physicians' prescribing of Effexor was reasonably contemplated, intended, and foreseen by Manufacturing Defendants at the time of the distribution and sale of Effexor by Manufacturing Defendants, and, therefore, the Mother

Case ID: 120401876

Plaintiff's use of Effexor was within the scope of the above-described express and implied warranties.

137.    Manufacturing Defendants breached the aforesaid express and implied warranties because Effexor was not safe and effective for the treatment of women during pregnancy because it exposed the developing fetus to a significant risk of serious injury, and because the Mother Plaintiff's use of Effexor for treatment during her pregnancy caused the Infant Plaintiff's injuries.

138.    As a direct and proximate result of Manufacturing Defendants' breach of express and implied warranties, Plaintiffs suffered injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against Manufacturing Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT EIGHT – NEGLIGENCE

*(As Against PEM Defendants)*

139.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

140.    PEM Defendants were negligent, and breached duties owed to Plaintiffs with respect to Effexor in the following regard:

> a)    Despite knowledge of injurious side effects, PEM Defendants failed to author, analyze, create, compile, design, draft, disseminate, distribute, edit, evaluate, market, publish, and supply prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature to Plaintiffs regarding the adverse effects associated with Effexor's foreseeable use by Plaintiff;

41

Case ID: 120401876

b)   PEM Defendants recklessly, improperly, and negligently failed to provide truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings in the written Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature that it authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published, and supplied for the ultimate purpose of informing consumers including the Plaintiffs;

c)   PEM Defendants knew or should have known through the exercise of reasonable care that the prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature provided to Plaintiffs and other Effexor consumers substantially understated the risks and dangers of ingesting the drug Effexor;

d)   PEM Defendants failed to use reasonable care to modify the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature to adequately warn Plaintiffs, patients, pharmacists, and physicians about the true risks of Effexor use;

e)   PEM Defendants failed to properly assess, analyze, and interpret the studies, research, adverse event reports, and other information available regarding the dangers and side effects of Effexor use;

f)   PEM Defendants omitted and/or minimized information and warnings regarding congenital birth defects;

g)   PEM Defendants, directly or indirectly, negligently and/or defectively authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature that was unsuitable for their intended purpose of warning consumers about the risks and side effects of Effexor that the Plaintiff was taking;

h)   PEM Defendants had actual and/or constructive knowledge that pharmacists, medical professionals, and consumers, such as Plaintiffs, would rely upon the information and

42

Case ID: 120401876

warnings disseminated in their prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature for Effexor, and that many patients, in accordance with their prescription and prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature would be likely to ingest Effexor; and/or

i)   PEM Defendants knew, or should have known, that the incomplete, inaccurate, and misleading prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature it supplied to consumers, such as Plaintiffs, regarding the drug Effexor, created an unreasonable risk of injury, including an unreasonable risk of congenital birth defects to a developing fetus.

141.   As a result of PEM Defendants' negligence and their willful and wanton misconduct, Effexor was prescribed and used by the Mother Plaintiff thereby causing Plaintiffs to sustain reasonably foreseeable, serious and permanent damages and injuries as alleged in this Complaint.   PEM Defendants' negligence and their willful and wanton misconduct was a proximate cause of Plaintiffs' harm and injuries.

142.   PEM Defendants' conduct fell below the required standard of care in that it failed to comply with the minimal standards of conduct adhered to by a reasonably prudent company in the business of preparing consumer warnings and information in connection with pharmaceutical products.

143.   The negligent and/or willful and wanton conduct described above directly and proximately caused Plaintiffs' injuries.   Had PEM Defendants met its duty and provided truthful, accurate, adequate, useful, appropriate, up-to-date and complete warnings regarding Effexor, the Mother Plaintiff would not have ingested Effexor.   Instead, Plaintiffs relied upon the negligently prepared prescription drug information, labels, patient education monographs, patient inserts, warnings, and literature to Plaintiffs' detriment.

43

144.    As a direct and proximate result of the actions and inactions of PEM Defendant as set forth above, Plaintiffs were exposed to Effexor, and suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against PEM Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT NINE – STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN

### *(As Against PEM Defendants)*

145.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

146.    PEM Defendants engaged in the business of authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying drug information intended to be provided to consumers of prescription drugs.  To that end, PEM Defendants authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published, supplied and contributed into the stream of commerce the prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature which are a component of the Effexor product as sold to Plaintiffs.

147.    At all times material hereto, both the drug Effexor and the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by PEM Defendants, was defective and

44

unreasonably dangerous to Plaintiffs and other foreseeable users at the time it left the control of PEM Defendants.

148.    At all times material hereto, the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was expected to reach, and did reach, consumers, including the Plaintiffs, without substantial change in the content or condition of the prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature.

149.    Plaintiff was of the type of patient that PEM Defendants could reasonably expect would fill a prescription for Effexor and would receive  Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature.

150.    The Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was defective and unreasonably dangerous when the product was initially drafted, subsequently when it was promoted, when it was placed into the stream of commerce, and when it was received by Plaintiffs in ways which include, but are not limited to, one or more of the following:

    a)    When placed in the stream of commerce, the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature contained unreasonably dangerous design defects and was not reasonably safe for its intended use of warning consumers about the risks of the drug.  As a result, Plaintiffs were subjected to risks which exceeded the benefits of the drug;

    b)    The Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature provided by PEM Defendants was insufficiently researched, tested, and evaluated prior to its initial release, sale, or use;

45

Case ID: 120401876

c)   The Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature provided by PEM Defendants was not adequately revised or amended based on emerging scientific and medical data and study results;

d)   Upon information and belief, the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature failed to include, or failed to adequately emphasize, Effexor's harmful propensity to cause congenital birth defects; and/or

e)   The Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature was not of a nature that would suffice to apprise a reasonable consumer of the full nature and extent of the risks and side effects of Effexor use, particularly the risk of congenital birth defects, despite the fact that these risks were known or reasonably scientifically knowable at the time the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and/or literature left the possession of PEM Defendants.

151.   PEM Defendants knew, or in light of reasonably available scientific knowledge should have known, about the danger that Effexor would cause injuries, particularly congenital birth defects. A reasonably competent PEM provider, when authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying and updating Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, would have included a warning sufficient to apprise consumers of the risk of congenital birth defects resulting from Effexor use. PEM Defendants' Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature was defectively designed because it failed to include an adequate warning regarding the risk of congenital birth defects.

Case ID: 120401876

152.    As a direct and proximate result of PEM Defendants' actions and inactions as set forth above, Plaintiffs were exposed to Effexor, and suffered, and will continue to suffer into the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

### COUNT TEN – STRICT PRODUCTS LIABILITY – FAILURE TO WARN

*(As Against PEM Defendants)*

153.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

154.    The Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by PEM Defendants was defective and unreasonably dangerous when it left PEM Defendant's possession, in that it contained warnings insufficient to alert consumers, including the Plaintiffs, to the dangerous risks associated with Effexor, including, but not limited to, congenital birth defects.

155.    Plaintiff was administered Effexor for the drug's intended purpose. At the time Plaintiff's Effexor prescription was filled, Plaintiff received and read prescription drug information, labels, patient education monographs, patient inserts, warnings and literature regarding Effexor that was authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by PEM Defendants. Upon information and belief, the prescription drug information, labels, patient

47

education monographs, patient inserts, warnings and literature Plaintiff received was supplied to Plaintiff's pharmacy by PEM Defendants for the intended purpose of alerting consumers of the risks and side effects of their prescription medications.

156.   Plaintiffs could not have discovered the defects in the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature through the exercise of care.

157.   PEM Defendants had a continuing duty to monitor, revise, and amend the content of its Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature to accurately present the dangers associated with Effexor.

PEM Defendants failed to adequately warn consumers, including the Plaintiffs, of the dangers associated with Effexor or that the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature was not a comprehensive or reliable presentation of the drug's dangers.   More specifically, PEM Defendants did not adequately warn of the risk of congenital birth defects that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution, nor did PEM Defendants adequately advise Plaintiffs that serious and life-threatening health risks associated with Effexor had been omitted, such as congenital birth defects, from the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature.   The warnings that were given by PEM Defendants were not truthful, accurate, adequate, useful, appropriate, up-to-date and/or complete.

158.   PEM Defendants, as the author and provider of truthful, accurate, adequate, useful, appropriate, up-to-date and complete information and warnings for consumers, is held to the level of knowledge and care of a reasonable PEM provider.

48

159.    As a direct and proximate result of PEM Defendants' actions and inactions as set forth above, Plaintiffs were exposed to Effexor, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT ELEVEN – FRAUD, MISREPRESENTATION AND SUPPRESION

*(As Against* PEM Defendants*)*

160.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

161.    PEM Defendants fraudulently, intentionally, and/or negligently misrepresented to the public, and to Plaintiffs, both directly and by and through Plaintiff's pharmacists and physicians, the safety and effectiveness of the drug, and/or fraudulently, intentionally, and/or negligently concealed, suppressed, or omitted material, adverse information regarding the safety and effectiveness of the Effexor.

162.    The intentional and/or negligent misrepresentations and omissions of PEM Defendants regarding the safety and efficacy of Effexor and of the drug's minimal side effects were communicated to Plaintiffs directly through the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature. provided with Plaintiff's prescription.    The safety and efficacy of Effexor was also intentionally and/or negligently misrepresented to Plaintiff's pharmacists and physicians with the intent that such misrepresentations would cause Effexor to be provided and prescribed to Plaintiff.

49

Case ID: 120401876

163.   PEM Defendants either knew or should have known that the material representations they were making regarding the Effexor's safety, efficacy, and minimal side effects were false.

164.   PEM Defendants fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce Plaintiffs, Plaintiff's physician, and the consuming public to prescribe and use Effexor.  PEM Defendants fraudulently, intentionally, and/or negligently, knew or should have known that Plaintiffs, Plaintiff's prescribing physicians, and the consuming public would rely on such material misrepresentations and/or omissions in selecting Effexor for the treatment of the Mother Plaintiff.  Wolters Kluwer knew or should have known that Plaintiffs and Plaintiff's physicians would rely upon their false representations and/or omissions.

165.   PEM Defendants made these misrepresentations and actively concealed adverse information, including the risk of congenital birth defects, at a time when they, their agents and/or their employees knew, or should have known, that the drug product had defects, dangers, and characteristics that were other than what had been represented to the medical community and the consuming public, including the Plaintiffs herein.   Specifically, PEM Defendants misrepresented and/or actively concealed, suppressed, or omitted that there had been inadequate testing of the safety and efficacy of Effexor, and that prior studies, research, reports, and/or testing had been conducted linking the use of the drug to serious adverse reactions, including congenital birth defects.

166.   Despite the fact that PEM Defendants knew or should have known of reports of severe adverse reactions, including congenital birth defects, with Effexor use, adverse drug

50

information was strategically minimized, understated, or omitted in order to create the overall impression that the dangers were insignificant and infrequent.

167.    The fraudulent, intentional and/or negligent material misrepresentations and/or active concealment, suppression, and omissions by PEM Defendants were perpetuated directly and/or indirectly through the databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature and other information authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied by PEM Defendants.

168.    PEM Defendants' material misrepresentations and/or active concealment, suppression, and omissions constitute a continuing tort.

169.    PEM Defendants misrepresented the safety and efficacy of Effexor in its databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature and other information.

170.    If Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians had known the true facts concerning the risks of the use of Effexor, in particular the risk of congenital birth defects, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians would not have used, provided, or prescribed Effexor and would have instead sought a safer alternative, or no drug.

171.    Plaintiffs, Plaintiff's pharmacists', and Plaintiff's physicians' reliance upon PEM Defendants' material misrepresentations and/or omissions was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Effexor while Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians, were not in a position to know the true facts, and because the PEM Defendant overstated the benefits and safety of Effexor, and concomitantly downplayed the risks

51

Case ID: 120401876

in its use, including congenital birth defects, thereby inducing Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians to use, provided, or prescribe Effexor, in lieu of other, safer alternatives.

172.   As a direct and proximate result of PEM Defendant's actions and inactions as set forth above, Plaintiffs were exposed to Effexor, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TWELVE - BREACH OF EXPRESS AND IMPLIED WARRANTIES

*(As Against PEM Defendants)*

173.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

174.   PEM Defendants, in the marketing, distribution, and sale of products encompassing Effexor databases, printouts, prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, expressly and impliedly warranted to Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians that the information and warnings it was providing was truthful, accurate, adequate, useful, appropriate, up-to-date and complete in order to warn consumers of the dangers and risks of various prescription drugs, including Effexor. As the intended and foreseeable recipients of the information contained in the Effexor prescription drug information, labels, patient education monographs, patient inserts,

Case ID: 120401876

warnings and literature, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians were the beneficiaries of the express and implied warranties made by PEM Defendants.

175.   PEM Defendants, in their prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, expressly warranted to the medical community and consumers that Effexor was safe and fit for use by Plaintiffs and the general public for the treatment of the conditions suffered by the Mother Plaintiffs. In actuality, the drug Effexor was not fit, safe, effective, and proper when prescribed by physicians for human use.

176.   The drug Effexor, in the composition and condition that it was marketed, distributed, and sold to Plaintiffs was unsafe and unfit for human use so as to be in breach of the express and implied warranties that the drug was fit for its intended purpose.   In particular, by overstating the benefits and safety of Effexor and by understating other risks attendant to the drug's use, including, but not limited to, congenital birth defects, PEM Defendants induced Plaintiff to use Effexor, in lieu of other, safer alternatives, and induced Plaintiff's pharmacy to dispense Effexor, and induced Plaintiff's physician to prescribe Effexor to the Plaintiff.

177.   Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians relied upon the representations of PEM Defendants, as contained in the Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, as to the risks of using Effexor.   In particular, Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians relied upon PEM Defendants's representations and omissions concerning the risk of congenital birth defects associated with Effexor use.

178.   Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians reliance upon PEM Defendants' misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who claimed to be

Case ID: 120401876

providing truthful, accurate, adequate, useful, appropriate, up-to-date and complete drug information. Furthermore, PEM Defendants were in a position to know the true facts concerning Effexor while Plaintiff, Plaintiff's pharmacists, and Plaintiff's physicians were not in a position to know the true facts.

179.   If Plaintiffs, Plaintiff's pharmacists and Plaintiff's physicians had known the true facts concerning the risks of the use of Effexor, in particular the risk of congenital birth defects, Plaintiffs, Plaintiff's pharmacists, and Plaintiff's physicians would not have used, provided, or prescribed Effexor, and would have instead sought a safer alternative.

180.   As a direct and proximate result of PEM Defendants' actions and inactions as set forth above, Plaintiffs were exposed to Effexor, and suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the PEM Defendant for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT THIRTEEN - GROSS NEGLIGENCE/MALICE

*(As Against Manufacturing Defendants and PEM Defendants)*

181.   Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

182.   Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts for gross negligence and/or malice.

183.   While performing each of the acts and omissions previously set forth in this Complaint, Defendants actually knew of the defective nature of their products and the

Case ID: 120401876

inadequacy of their warnings as set forth herein, yet Defendants continued to author, create, design, distribute edit, manufacture, market, sell and provide their products in their defective condition so as to maximize sales and profits at the expense of Plaintiffs' health and the health of the consuming public.

184.    The acts and omissions of Manufacturing Defendants and PEM Defendants involved an extreme degree of risk, given the probability and magnitude of causing harm to Plaintiffs and others.

185.    Manufacturing Defendants and PEM Defendants had actual, subjective awareness of the risk of injury posed by Effexor and the Effexor information and warnings, to consumers such as Plaintiffs. Moreover, a reasonable company in the position of the Defendants would have been aware of the risk of injury posed to consumers by the use of Effexor and the Effexor information and warnings. Yet, Manufacturing Defendants and PEM Defendants proceeded in conscious disregard to the rights, safety, and welfare of Plaintiffs.

186.    The acts and omissions of Manufacturing Defendants and PEM Defendants demonstrate that they did not care about the peril they subjected upon Plaintiffs such that their conduct was grossly negligent.

187.    Further, the wrongs done by the Defendants were aggravated by the kind of malice, fraud, and reckless disregard for the rights of others, the public, and Plaintiffs for which the law allows the imposition of exemplary damages in that the Defendants' conduct:

> a)    when viewed objectively from the Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and the Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; and/or

55

Case ID: 120401876

> b)  included a material representation that was false, with the Defendants knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiffs. Plaintiffs relied on the representation and suffered injury as a proximate result of this reliance.

188.  Plaintiffs therefore seek to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

189.  Plaintiffs also allege that the acts and omissions of the Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiffs. In that regard, Plaintiffs will seek exemplary damages in an amount that would punish the Defendants for their conduct and which would deter other similar defendants from engaging in such misconduct in the future.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FOURTEEN - LOSS OF CONSORTIUM AND PECUNIARY LOSS

*(As Against Manufacturing Defendants and PEM Defendants)*

190.  Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

191.  The Defendants are liable to Plaintiffs under state common law and/or the applicable state Product Liability Acts.

192.  As a direct and proximate result of the actions and inactions of the Defendants as set forth above, Plaintiffs were exposed to Effexor and the Parent Plaintiffs have suffered, and

Case ID: 120401876

will continue to suffer, the past and future injuries, damages, and losses as a result of the Infant Plaintiff's injuries, as set forth herein.

193.    The Defendants are liable to Parent Plaintiffs for all general, special, and punitive damages, delay damages, and other relief to which they are entitled by law.

**WHEREFORE,** for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FIFTEEN – PUNITIVE DAMAGES

*(As Against Manufacturing Defendants and PEM Defendants)*

194.    Plaintiffs incorporate by reference all of the above paragraphs as if set forth in full herein.

195.    Plaintiffs are entitled to punitive damages, pursuant to state common law or the applicable statutory provision, because the Defendants' actions were reckless and without regard for the public's safety and welfare.   The Defendants knowingly withheld, concealed or misrepresented the risks and dangers of Effexor and the Effexor information and warnings, including the risk of congenital birth defects, from both the medical community and the public at large, including Plaintiffs, their physicians and pharmacists.   The Defendants downplayed, understated, and disregarded their knowledge of the serious and permanent side effects associated with the use of Effexor, including congenital birth defects, despite information demonstrating Effexor was unreasonably dangerous and in conscious disregard of the risk of serious injury posed to Plaintiffs by these known misrepresentations and/or omissions.

57

Case ID: 120401876

196.     Plaintiffs are entitled to punitive damages, pursuant to state common law or the applicable statutory provision, because Defendants' actions were reckless and without regard for the public's safety and welfare.  Defendants misled both  the medical community and the public at large, including Plaintiffs, their physicians and pharmacists, by making false representations about and concealing pertinent information regarding Effexor and its information and warnings. Defendants downplayed, understated and disregarded its knowledge of the serious and permanent side effects associated with the use of Effexor, including congenital birth defects, despite information demonstrating the product was unreasonably dangerous.

197.     At all times material hereto, the Manufacturing Defendants had a duty to exercise reasonable care in the advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Effexor.

198.     The conduct of the Manufacturing Defendants in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, manufacturing, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Effexor, and in failing to warn Plaintiffs, the Mother's Plaintiff physicians, pharmacists and other members of the public of the dangers inherent in the use of Effexor, which were known to the Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiffs.

199.     The Manufacturing Defendants knew that Effexor had unreasonably dangerous risks and caused serious side effects of which Plaintiffs, their physicians and pharmacists would not be aware. The Defendants nevertheless advertised, analyzed, assembled, compounded,

Case ID: 120401876

designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packaged, produced, promoted, processed, researched, sold, and tested Effexor knowing that there were safer methods and products available.

200.    At all times material hereto, the PEM Defendants had a duty to exercise reasonable care in the authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature.

201.    The conduct of the PEM Defendants in authoring, analyzing, creating, compiling, designing, drafting, disseminating, distributing, editing, evaluating, marketing, publishing and supplying Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature, and in failing to warn Plaintiffs, the Mother's Plaintiff physicians, pharmacists and other members of the public of the dangers inherent in the use of Effexor, which were known to the Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiffs.

202.    The PEM Defendants knew that Effexor had unreasonably dangerous risks and caused serious side effects of which Plaintiffs, their physicians and pharmacists would not be aware. The Defendants nevertheless authored, analyzed, created, compiled, designed, drafted, disseminated, distributed, edited, evaluated, marketed, published and supplied Effexor prescription drug information, labels, patient education monographs, patient inserts, warnings and literature knowing that there were safer methods and products available.

Case ID: 120401876

203.    The Defendants' actions were performed willfully, deliberately, intentionally, and with reckless disregard for the rights and safety of Plaintiffs and the public and caused substantial financial injury.

204.    The conduct of the Defendants, undertaken with knowledge, for these purposes, evinces gross negligence and a willful, wanton, and conscious disregard for the rights and safety of consumers, including the Plaintiffs, and as a direct and proximate result of the Defendants' actions and inactions, Plaintiffs suffered injuries due to Defendants' disregard for Plaintiffs' rights and safety, and therefore, Plaintiffs are entitled to an award of punitive damages from Manufacturing Defendants and PEM Defendants.

**WHEREFORE**, for the above reasons, Plaintiffs demand judgment in their favor and against the Defendants for an amount in excess of $50,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## V.    <u>JURY DEMAND</u>

205.    Plaintiffs demand that all issues of fact in this case be tried to a properly empanelled jury.

## VI.    <u>CONCLUSION AND PRAYER</u>

**WHEREFORE**, Plaintiffs request trial by jury and that the Court grants them the following relief against the Defendants, on all counts of this Complaint, including:

(A)    Money Damages representing fair, just, and reasonable compensation for their respective common law and statutory claims in excess of $50,000.00;

(B)    Lost Wages;

(C)    Punitive and/or Treble Damages pursuant to state law;

Case ID: 120401876

(D)     Attorneys' fees pursuant to state law;

(E)     Pre-judgment and post-judgment interests as authorized by law on the judgments

        which enter on Plaintiffs' behalf;

(F)     Costs of suit and expenses;

(G)     Delay Damages; and

(H)     Such other relief as is deemed just and appropriate.

                                Respectfully Submitted,

                                  /s/  Rosemary Pinto
                                Rosemary Pinto, Esq.
                                Pa. Bar No. 53114
                                RPinto@feldmanpinto.com
                                **FELDMAN & PINTO**
                                1604 Locus St, FL 2R
                                Philadelphia, PA  19103
                                Telephone: 215- 546-4385

                                J. Scott Nabers, Esquire (Pa. Bar No. 310357)
                                snabers@blizzardlaw.com
                                Rebecca B. King, Esquire (Pa. Bar No. 310895)
                                rking@blizzardlaw.com
                                Edward F. Blizzard, Esquire (TX Bar No: 02495000)
                                eblizzard@blizzardlaw.com
                                **BLIZZARD, MCCARTHY & NABERS**
                                440 Louisiana, Suite 1710
                                Houston, TX 77002
                                Office: (713) 844-3750
                                Facsimile (713) 844-3755

Case ID: 120401876

## VERIFICATION

I, Rosemary Pinto, hereby state:

1.      I am the Attorney in this action;

2.      I verify that the statements made in the foregoing COMPLAINT  are true and correct to the best of my knowledge, information and belief, and;

3.      I understand that the statements in the foregoing COMPLAINT are made subject to the penalties of 18 PA. C.S.A. § 4904 relating to the unsworn falsification to authorities.

_/s/ Rosemary Pinto_____          _April 17, 2012_____
ROSEMARY PINTO                                                        (Date)

62

Case ID: 120401876